COMMONWEALTH *vs.* ROBERT DOWD & another.[1]

No. 92-P-1688.

Barnstable. January 20, 1994. - August 18, 1994.

Present: PERRETTA, KASS, & IRELAND, JJ.

*Attorney General. Housing. Anti-Discrimination Law*, Housing, Attorney's
fees. *Statute*, Construction. *Words*, "Aggrieved person."

The provisions of G. L. c. 151B, § 9, authorizing the award of attorney's
fees to an "aggrieved person" who prevails in an action brought under
c. 151B seeking redress for unlawful discrimination in housing accom-
modation, do not authorize such an award to the Commonwealth where
the Attorney General, pursuant to G. L. c. 151B, § 5, commences a
civil action in the name of the Commonwealth on behalf of a complain-
ant. [165-170]

CIVIL ACTION commenced in the Superior Court Depart-
ment on February 11, 1991.

The case was heard by *Gerald F. O'Neill, Jr.*, J.

*Robert K. Dowd* for the defendants.

*Judith E. Beals*, Assistant Attorney General, for the
Commonwealth.

KASS, J. Florence Dowd, who had authority to rent apart-
ments in a building owned by her son, Robert, disapproved of
unmarried people living together. Her stern conviction on
this score ran her afoul of G. L. c. 151B, § 4(7), which for-
bids refusing to rent a housing accommodation on the basis
of marital status.[2] The principal issue on appeal from a Su-

---

[1]Florence Dowd, Robert's mother.

[2]So far as material, G. L. c. 151B, § 4 (1988 ed.), provides — "It shall
be an unlawful practice: (7) For the owner . . . of . . . housing accommo-
dations . . . (a) to refuse to rent or lease . . . because of . . . marital
status." Whether a person, out of religious conviction, may refuse to rent
to an unmarried couple is still an open question. See *Attorney Gen.* v.
*Desilets*, 418 Mass. 316 (1994).

perior Court judgment adverse to the Dowds is whether the Commonwealth, in the person of the Attorney General, may recover, in the same manner as a private person might, reasonable legal fees on account of the Attorney General's exertions in bringing a successful action to enforce § 4(7). We decide that the government may not recover such amounts and reverse so much of the judgment as awarded $9,080 to the Commonwealth on account of legal fees.

The Attorney General was drawn into the case because the Dowds exercised the option, granted by the second paragraph of G. L. c. 151B, § 5, as amended by St. 1989, c. 722, §§ 24-29, to persons against whom the Massachusetts Commission Against Discrimination has made a finding of probable cause of unlawful conduct under G. L. c. 151, to have a judicial, rather than administrative, determination of the charge. Unless the target of complaint elects a judicial determination, the tribunal before which alleged violations of § 4 are adjudicated is the commission. See G. L. c. 6, § 56; G. L. c. 151B, §§ 1(7), 4, and 5. Once an election of judicial determination has been made, it is the duty of the Attorney General to commence a civil action on behalf of the complainant in the Superior Court, G. L. c. 151B, § 5, and the Attorney General did so. A judge of that court found that the Dowds had, indeed, violated § 4(7), enjoined them from further violation, and awarded compensatory damages of $1,000 to Lois Vance, the woman to whom Florence Dowd in September, 1989, had refused to lease an apartment because Vance proposed to occupy it with a man friend.

The Attorney General asked for and received an award of $9,080 in attorney's fees to be paid by the Dowds.

Section 5 of c. 151B provides that in any action brought under it there shall be available to an "aggrieved person" the panoply of remedies available to an aggrieved person under G. L. c. 151B, § 9. Those include "reasonable attorney's fees and costs unless special circumstances would render such an award unjust." G. L. c. 151B, § 9, inserted by St. 1946, c. 368, § 4. Although the Dowds argue otherwise, we are satisfied that the government's request for attorney's fees was

timely, that the circumstances of the case are such that an award of fees would be altogether just, and that the amount of the fees was reasonable. There remains, however, the fundamental question whether the government may qualify as an "aggrieved person" who may recover attorney's fees.

For purposes of construing the General Laws, the word "person" ordinarily does not describe the State or its subdivisions. *Hansen* v. *Commonwealth*, 344 Mass. 214, 219 (1962), and cases cited. *Kilbane* v. *Secretary of Human Servs.*, 14 Mass. App. Ct. 286, 287 (1982). *Commonwealth* v. *Voight*, 28 Mass. App. Ct. 769, 771-773 (1990). *Commonwealth* v. *ELM Med. Labs., Inc.*, 33 Mass. App. Ct. 71, 76-77 (1992). This canon of construction is scarcely limited to Massachusetts. "[I]n common usage, the term 'person' does not include the sovereign, [and] statutes employing the [word] are ordinarily construed to exclude it." *Will* v. *Michigan Dept. of State Police*, 491 U.S. 58, 64 (1989) (citations omitted). Compare *Board of Health of Wrentham* v. *Hagopian, post* 174 (1994). Compare *Housing Authy. of the Kaw Tribe of Indians of Oklahoma* v. *City of Ponca City*, 952 F.2d 1183, 1193-1195 (10th Cir. 1991), cert. denied, 504 U.S. 912 (1992).

As to the phrase "aggrieved person" or "person aggrieved," when it appears in the General Laws, it denotes private rather than governmental or public interest. So, for example, in G. L. c. 272, § 98, which imposes criminal penalties (fine up to $2,500 or imprisonment up to one year, or both) for unlawful discrimination in places of public accommodation, the transgressor is also liable "to any person aggrieved thereby for such damages as are enumerated in [G. L. c. 151B, § 5]." As to the vindication of private claims involving violations of G. L. c. 272, §§ 92A, and 98, see *United States Jaycees* v. *Massachusetts Commn. Against Discrimination*, 391 Mass. 594, 595-596 (1984). Similarly, G. L. c. 272, § 99Q, provides a civil remedy for an "aggrieved person" whose private interests are violated by an unlawful wiretap interception. See *Pine* v. *Rust*, 404 Mass. 411, 414 (1989). In zoning litigation, the statutory phrase

"person aggrieved" which appears in §§ 8 and 17 of G. L. c. 40A, has meant someone who can assert a plausible claim of private right, private property interest, or private legal interest as opposed to a general public concern about a zoning question. *Waltham Motor Inn, Inc.* v. *LaCava*, 3 Mass. App. Ct. 210, 213-215 (1975), and cases cited. *Harvard Square Defense Fund, Inc.* v. *Planning Bd. of Cambridge*, 27 Mass. App. Ct. 491, 492-493 (1989).

The Attorney General argues that the more appropriate statutory reference point is the United States Civil Rights Act, notably 42 U.S.C. § 1988(b) (Supp. IV 1992), which provides that in various enumerated actions "the court, in its discretion, may allow the prevailing party, *other than the United States*, a reasonable attorney's fee as part of the costs" (emphasis supplied). Congress, the Commonwealth argues, has shown how to draft a statute which denies an award of attorney's fees to the government, and the absence of similar express exclusion in G. L. c. 151B, § 5 or § 9, should be taken as meaning that the Attorney General may have such an award.

The statutory prototype for G. L. c. 151B, § 5, is not 42 U.S.C. § 1988 but, rather, the Fair Housing Act, 42 U.S.C. §§ 3601-3631.[3] There are in 42 U.S.C. § 3612 (1988)[4] striking parallels to the procedure and remedies laid out in G. L. c. 151B, § 5, as amended by St. 1989, c. 628, § 24. For example, § 3612(a) provides that when a person charging unlawful discrimination files a complaint with the Secretary of Housing and Urban Development, "a complainant, a respondent, or an *aggrieved person* on whose behalf the complaint was filed" may elect to have the merits of the claim decided in a civil action instead of administrative enforcement proceedings (emphasis supplied). If there is an election to proceed judicially, "the Attorney General shall commence

---

[3]See generally Reed, Housing Law — *United States* v. *Columbus Country Club*: How "Religious" Does an Organization Have to Be to Qualify for the Fair Housing Act's Religious Organization Exemption? 15 Western N.E.L. Rev. 61 (1993).

[4]First enacted in 1968.

and maintain[ ] a civil action on behalf of the *aggrieved person* in a United States District Court." 42 U.S.C. § 3612(o)(1) (emphasis supplied). The "aggrieved person" may intervene in such a proceeding as of right. 42 U.S.C, § 3612(o)(2). If the court determines "that a discriminatory housing practice has occurred or is about to occur, the court may grant as relief any relief which a court could grant with respect to such discriminatory housing practice in a civil action under § 3613 of this title. Any relief so granted that would accrue *to an aggrieved person* in a civil action commenced by *that aggrieved person* under section 3613[5] of this title shall also accrue *to that aggrieved person* in a civil action under this subsection." 42 U.S.C. § 6312(o)(3) (emphasis supplied). "[T]he court . . . in its discretion may allow the prevailing party, other than the United States, a reasonable attorney's fee and costs." 42 U.S.C. § 3612(p).

The reader will have observed that, under the Fair Housing Act, as under 42 U.S.C. § 1988, attorney's fees may be recovered by the prevailing party, i.e., including the party charged with unlawful discrimination should it triumph, and the United States is not entitled to attorney's fees. In those respects, §§ 3612 and 3613 differ from their Massachusetts analogs and, as previously noted, the Commonwealth emphasizes the express exclusion in the Federal scheme of the government as a candidate for an award of attorney's fees. So much greater, however, are the similarities between the Federal and State statutes, that it is profitable to consider how Federal decisions have dealt with who are aggrieved persons and why they should recover attorney's fees.

Those cases have uniformly involved individual parties or advocacy groups acting as private attorneys general. Housing rights rely heavily on private enforcement rather than the efforts of government lawyers burdened with broad enforcement agendas. Fee awards are the means to send the private attorneys general into the field so that the access of individu-

---

[5]As § 3612 corresponds to G. L. c. 151B, § 5, the provisions of § 3613 correspond to G. L. c. 151B, § 9, in that both provide for enforcement of unlawful housing discrimination statutes by individuals.

als to housing free of unlawful discrimination may, as a practical matter, be realized. See *Reynolds* v. *Coomey*, 567 F.2d 1166 (1st Cir. 1978); *Dennis* v. *Chang*, 611 F.2d 1302, 1307 (9th Cir. 1980); *Palmigiano* v. *Garrahy*, 616 F.2d 598, 601-602 (1st Cir. 1980); *Oldham* v. *Ehrlich*, 617 F.2d 163, 168 (8th Cir. 1980); *Wilson* v. *Stocker*, 819 F.2d 943, 951 (10th Cir. 1987). See also *Rogers* v. *66-36 Yellowstone Blvd. Co-op. Owners*, 599 F. Supp. 79 (1984) (discusses interrelation of § 1988 and § 3612); *Keith* v. *Volpe*, 644 F. Supp. 1317, 1320 (C.D. Cal. 1986), aff'd, 858 F.2d 467 (9th Cir. 1988), cert. denied, 493 U.S. 813 (1989).

In any event, the phrase "aggrieved person" necessarily means someone other than the Attorney General of the United States, because it is the "aggrieved person," as used in the Federal statutory scheme from which our Legislature borrowed, who may step in as intervener after the Attorney General has initiated a fair housing case. Categorization of an "aggrieved person" as a private party with a particular interest in the leasing or sale of a housing accommodation is consistent with the customary use of the phrase in Massachusetts statutes. Within G. L. c. 151B, § 5, itself the phrase "aggrieved person" appears to be used interchangeably with the word "complainant," which is used in the same paragraph.

We conclude from the statutory language, from examination of the Federal analogs, and from the well understood purpose for the award of legal fees that the right of the Attorney General of Massachusetts to recover amounts on account of legal fees is not to be implied; it must be based on express legislative language. It is not as if the Legislature cannot express itself on this subject when it desires so to do. In the analogous area of consumer protection it has spoken directly. General Laws c. 93A, § 4, as amended by St. 1985, c. 468, now provides that when the Attorney General brings an action in the name of the Commonwealth, the person chargeable with violation of c. 93A may be subjected to civil penalties to be paid to the Commonwealth, as well as "the reasonable costs of investigation and litigation of such viola-

tion, including reasonable attorney's fees." No similar provision appears in G. L. c. 151B, §§ 5 or 9.

The portion of the judgment requiring payment of $9,080 on account of attorney's fees is struck. In all other respects, the judgment is affirmed.

*So ordered.*